No. 25-2361

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

KENNETH KARWACKI,

    Plaintiff-Appellant,

v.

JOSH KAUL,

    Defendant-Appellee.

APPEAL FROM JUDGMENT ENTERED IN THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN,
THE HONORABLE BRETT H. LUDWIG, PRESIDING

**BRIEF OF DEFENDANT-APPELLEE**

                            JOSHUA L. KAUL
                            Attorney General of Wisconsin

                            AARON J. BIBB
                            Assistant Attorney General
                            State Bar #1104662

                            Attorneys for Defendant-Appellee

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0810
(608) 294-2907 (Fax)
aaron.bibb@wisdoj.gov

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................................5

INTRODUCTION ...........................................................................................5

ISSUES PRESENTED ....................................................................................6

STATEMENT OF THE CASE .......................................................................7

SUMMARY OF THE ARGUMENT ..............................................................8

STANDARD OF REVIEW .............................................................................9

ARGUMENT ...................................................................................................9

    I.     The Department's application of Wis. Stat. § 941.29(1m)(b) to Karwacki's conviction for peyote delivery was consistent with this country's long-established tradition of prohibiting firearm possession by those convicted of crimes with a high risk of violence ..................................................................9

    II.    The Full Faith and Credit Clause does not require Wisconsin to defer to other jurisdictions' decisions about what constitutes a dangerous crime that warrants disarmament. ............................................... 14

CONCLUSION ............................................................................................. 17

CERTIFICATE OF SERVICE ................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*United States v. Holden,*
   70 F.4th 101 (2023) ................................................................................... 14

*Baker by Thomas v. Gen. Motors Corp.,*
   522 U.S. 222 (1998) .................................................................................. 15

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..................................................................................... 9

*Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chicago*,
  69 F.4th 437 (7th Cir. 2023) ............................................................................ 9

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ................................................................................. 9–10

*Donlan v. State*,
  249 P.3d 1231 (Nev. 2011) ........................................................................ 16

*Folajtar v. Att'y Gen. of U.S.*,
  980 F.3d 897 (3d Cir. 2020) ...................................................................... 13

*Kanter v. Barr*,
  919 F.3d 437 (7th Cir. 2019) ..................................................................... 13

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) ................................................................................... 10

*McGrath v. Tobin*,
  103 A.2d 795 (R.I. 1954) ............................................................................ 16

*Moran v. Wisconsin Department of Justice*,
  2019 WI App 38, 388 Wis. 2d 193, 932 N.W.2d 430 .............................. 16–17

*Nevada v. Hall*,
  440 U.S. 410 (1979) ................................................................................... 15

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
  597 U.S. 1 (2022) ..............................................................................6, *passim*

*Pac. Emps. Ins. Co. v. Indus. Accident Comm'n of State of Cal.*,
  306 U.S. 493 (1939) ............................................................................. 15, 17

*People v. Laino*,
  87 P.3d 27 (Cal. 2004) ............................................................................... 16

*Rosin v. Monken*,
  599 F.3d 574 (7th Cir. 2010) ............................................................ 6, 15–16

*State v. Bush*,
  9 P.3d 219 (Wash. 2000) ............................................................................ 16

*United States v. Bullock*,
  632 F.3d 1004 (7th Cir. 2011) ................................................................... 13

*United States v. Connelly*,
　117 F.4th 269 (5th Cir. 2024) .................................................................. 12

*United States v. Seiwert*,
　152 F.4th 854 (7th Cir. 2025) ........................................................... 6, 12–13

*United States v. Torres-Rosario*,
　658 F.3d 110 (1st Cir. 2011) .................................................................... 13

*United States v. Gay*,
　98 F.4th 843 (7th Cir. 2024) ..................................................................... 11

*United States v. Jackson*,
　110 F.4th 1120 (8th Cir. 2024) ................................................................. 11

*United States v. Kimble*,
　142 F.4th 308 (5th Cir. 2025) ........................................................... 6, 12–13

*United States v. Neal*,
　No. 23-CR-0141, 2024 WL 1794424 (E.D. Wis. Apr. 25, 2024) .................. 13

*United States v. Rahimi*,
　602 U.S. 680 (2024) ................................................................................ 11

*Wince v. CBRE, Inc.*,
　66 F.4th 1033 (7th Cir. 2023) ..................................................................... 9

**Statutes**

18 U.S.C. § 922(g)(1) ................................................................... 10, 12–13

18 U.S.C. § 922(g)(3) .............................................................................. 12

U.S. Const. amend. II ................................................................................ 9

U.S. Const. Art. IV, sec. 1 ........................................................................ 11

Wis. Stat. § 939.50(3)(e) ............................................................................ 5

Wis. Stat. § 941.29(1m)(b) ................................................................ 5, *passim*

Wis. Stat. § 961.14(4)(m) .......................................................................... 5

Wis. Stat. § 961.41(1)(a) ........................................................................... 5

4

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Kenneth Karwacki's jurisdictional statement is complete and correct.

## INTRODUCTION

Kenneth Karwacki applied for a concealed-carry permit from the Wisconsin Department of Justice, which the Department denied. (Pet. App. 32; Dkt. 1 ¶¶ 15–16.) Karwacki had previously been convicted of peyote delivery in a court martial (Pet. App. 31; Dkt. 1 ¶ 3), and the Department therefore could not grant Karwacki a permit under Wis. Stat. § 941.29(1m)(b), which prohibits firearm possession by a person who "has been convicted of a crime elsewhere that would be a felony if committed in this state."

In Wisconsin, peyote delivery is a Class E felony that is punishable by up to 15 years of imprisonment. Wis. Stat. §§ 939.50(3)(e), 961.14(4)(m), 961.41(1)(a). But in the jurisdiction in which Karwacki was convicted, his conduct carried only a misdemeanor charge. Karwacki says that because that jurisdiction decided to classify his conduct only as a misdemeanor, the Department violated his rights under the Second Amendment to the United States Constitution by denying his concealed-carry application.

Not so. The Department's application of section 941.29(1m)(b) to Karwacki's conviction for peyote delivery was "consistent with the Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Association, Inc.*

v. *Bruen*, 597 U.S. 1, 24 (2022). This tradition includes a history of separating the abuse of intoxicating substances from the use of firearms. *United States v. Seiwert*, 152 F.4th 854, 863–69 (7th Cir. 2025). It also includes a history of prohibiting firearm possession by discrete classes of individuals like drug traffickers who engage in criminal conduct closely linked to the threat of violence. *United States v. Kimble*, 142 F.4th 308, 314–17 (5th Cir. 2025). And Karwacki's argument that Wisconsin must defer to the judgment of another jurisdiction to classify his conduct as a mere misdemeanor would impermissibly allow that jurisdiction "to dictate the manner in which [Wisconsin] protects its populace" and therefore fails. *Rosin v. Monken*, 599 F.3d 574, 577 (7th Cir. 2010).

## ISSUES PRESENTED

1. Did the district court correctly conclude that the Wisconsin Department of Justice's denial of Karwacki's concealed-carry permit application under Wis. Stat. § 941.29(1m)(b) passed muster under the Second Amendment?

This Court should answer yes and affirm.

2. Does the Full Faith and Credit Clause require Wisconsin to defer to another jurisdiction's statutory scheme for classifying criminal offenses when deciding what criminal conduct warrants disarmament?

The district court did not reach this question. This Court should answer no and affirm.

## STATEMENT OF THE CASE

Karwacki was convicted "in a special court martial" of "unlawfully delivering peyote," a conviction for which he was "given a bad conduct discharge."[1] (Pet. App. 31; Dkt. 1 ¶ 3.) His conviction was a misdemeanor offense in that jurisdiction. (Pet. App. 31; Dkt. 1 ¶ 3.) He applied for a concealed-carry permit in 2024, which the Department denied "on the ground that he had been convicted of a felony offense." (Pet. App. 32; Dkt. 1 ¶¶ 15–16.) The Department upheld that decision in an administrative review process based on Wis. Stat. § 941.29(1m)(b)'s prohibition on firearm possession by a person convicted of a crime that would be a felony if committed in Wisconsin, and it said that Karwacki was therefore generally ineligible to possess a firearm under that statute. (Pet. App. 32–33; Dkt. 1 ¶¶ 18–20.)

Karwacki sued Attorney General Josh Kaul for declaratory and injunctive relief in the United States Court for the Eastern District of Wisconsin, contending that section 941.29(1m)(b) was unconstitutional both facially and as applied to him. (Pet. App. 30–35; Dkt. 1.) Attorney General Kaul filed a motion to dismiss the complaint for failure to state a claim. (Dkt. 5.)

---

[1] These facts are drawn from Karwacki's complaint (Dkt. 1) and are taken as true only for the purpose of reviewing the district court's dismissal of his complaint.

The district court granted the motion. (Pet. App. 22–29; Dkt. 10.) It concluded that the statute was constitutional as applied to Karwacki because his conviction for delivering peyote involved "conduct that Wisconsin deems sufficiently dangerous that it precludes anyone convicted of such offenses from possessing firearms." (Pet. App. 28; Dkt. 10:7.) It explained that "Wisconsin's judgment in enacting that regulation is consistent with Supreme Court and Seventh Circuit precedent" regarding "restrict[ing] firearm access for dangerous, non-law-abiding criminals, regardless of whether the individual is labeled a felon." (Pet. App. 28; Dkt. 10:7.) And the court explained that because the statute was constitutional as applied to Karwacki, his facial challenge necessarily failed.[2] (Pet. App. 29; Dkt. 10:8.)

This appeal followed.

## SUMMARY OF THE ARGUMENT

Karwacki contends that his peyote-delivery conviction should not bar him from firearm possession under section 941.29(1m)(b). To the contrary, the inherent link between drug trafficking and violence places his crime squarely within "the Nation's historical tradition of firearm regulation," *Bruen*, 597 U.S. at 24, and forecloses his as-applied challenge to the statute. Nor does the Full Faith and Credit Clause require Wisconsin to cede its judgment to

---

[2] Karwacki does not challenge the district court's dismissal of his facial challenge, so this brief will not address it.

other jurisdictions regarding what discrete categories of dangerous conduct warrant disarmament.

## STANDARD OF REVIEW

This Court "consider[s] the [district] court's grant of a motion to dismiss under Rule 12(b)(6) de novo, viewing the complaint in the light most favorable to the plaintiff and accepting all well-pleaded facts as true." *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1039 (7th Cir. 2023). This Court "draw[s] reasonable inferences in the plaintiff's favor." *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chicago*, 69 F.4th 437, 448 (7th Cir. 2023). "To survive a motion to dismiss, a plaintiff need allege 'only enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

I. **The Department's application of Wis. Stat. § 941.29(1m)(b) to Karwacki's conviction for peyote delivery was consistent with this country's long-established tradition of prohibiting firearm possession by those convicted of crimes with a high risk of violence.**

Karwacki contends that the Department's denial of his concealed-carry permit application violated his Second Amendment right "to keep and bear Arms," U.S. Const. amend. II. But "the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). To pass muster under the Second Amendment, a governmental

9

firearm restriction must be "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. The restriction does not have to be a "dead ringer for historical precursors," as it need only match a "historical *analogue*, not a historical *twin*." *Id.* at 30. The Department's application of section 941.29(1m)(b) to Karwacki's peyote-delivery conviction was consistent with this nation's tradition.

Section 941.29(1m)(b) prohibits firearm possession by a person who "has been convicted of a crime elsewhere that would be a felony if committed in this state." Wis. Stat 941.29(1m)(b). The statute is closely analogous to the federal felon-in-possession statute, which prohibits firearm possession by "any person . . . who has been convicted in any court of, a crime punishable imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). The Supreme Court has repeatedly assured lower courts that its recent Second Amendment decisions do not call that statute's constitutionality into question. In *Heller*, the Court emphasized that nothing in the opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 554 U.S. at 626. The Court repeated that "assurance[ ]" in *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010). And as *Heller*'s author, Justice Alito, stated in his *Bruen* concurrence, *Bruen* did not alter those statements in *Heller* and *McDonald*. *Bruen*, 597 U.S. at 72 (Alito, J., concurring).

10

It is thus at least possible that the federal felon-in-possession ban and comparable state-level statues like section 941.29(1m)(b) may not be subject to *any* as-applied challenges. *See United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024). But even if a statute like section 941.29(1m)(b) may support an as-applied challenge, the statute is constitutional as applied to Karwacki's conviction for peyote delivery.

The United States' history of firearm regulation allows governments "to disarm individuals who present a credible threat to the physical safety of others." *United States v. Rahimi*, 602 U.S. 680, 700 (2024). The threat need not be a threat of direct violence, as "non-violent offenses involving deceit and wrongful taking of property" were subject to "punishments that subsumed disarmament—death or forfeiture of a perpetrator's entire estate"—in pre-Revolutionary America. *United States v. Jackson*, 110 F.4th 1120, 1127 (8th Cir. 2024).

As this Court recently explained at length, this tradition includes preventing firearm possession by those who abuse intoxicating substances. *Seiwert*, 152 F.4th at 863–69. "[T]he Founders were well aware that intoxicated individuals posed a significant risk to the public," and disarmament of "drunkards" who would not give "security for good behavior" was common. *Id.* at 864–65. Laws that separated the use of firearms from the consumption of alcohol were likewise common, including provisions for

11

disarming drunken soldiers. *Id.* at 865. This Court therefore rejected an as-applied challenge brought by an admitted drug user to 18 U.S.C. § 922(g)(3), which bars firearm possession by "users of unlawful drugs." *Id.* at 858.

Karwacki does not address *Seiwert* directly, but he says that precedent based on section 922(g)(3) would not apply here because he was not convicted of *current* drug use but rather of *past* drug delivery. (Pet. Br. 12.) But he fails to explain why the distinction matters. *Seiwert* demonstrates the historical tradition of separating firearm possession from the abuse of intoxicants, and the trafficking of illegal intoxicants is at least as prone to violence as their abuse. Indeed, even courts and judges who question the constitutionality of section 922(g)(1) as applied to certain nonviolent felonies have no trouble applying it to nonviolent drug traffickers. For example, the Fifth Circuit has held that historical evidence similar to that discussed in *Seiwert* did not support application of the statute to a nonviolent drug *user*. *United States v. Connelly*, 117 F.4th 269 (5th Cir. 2024). But the court had no qualms with concluding that a categorical bar on firearm possession by drug *traffickers* comported with the nation's history of firearm regulation. *Kimble*, 142 F.4th at 314–17. It explained that categorically barring firearm possession by drug traffickers comported with "the scope of founding-era understandings regarding categorical exclusions from the enjoyment of the right to keep and bear arms"—that is, historical concerns about "threatened violence and the

risk of public injury." *Id.* at 316 (quoting *Kanter v. Barr*, 919 F.3d 437, 456 (7th Cir. 2019) (Barrett, J., dissenting)). Likewise, as Judge Stephanos Bibas noted in dissent in a case upholding application of section 922(g)(1) to a nonviolent tax fraud offense, "[L]egislatures may use careful rules of thumb to classify some felonies as dangerous. For instance, though residential burglary and drug dealing are not necessarily violent, they are dangerous because they often lead to violence. Disarming burglars and drug dealers makes sense because their past crimes were inherently dangerous." *Folajtar v. Att'y Gen. of U.S.*, 980 F.3d 897, 922 (3d Cir. 2020) (Bibas, J., dissenting) (recognized as abrogated by *Range v. Att'y Gen. of U.S.*, 69 F.4th 96 (3d Cir. 2023)) (citation omitted). Other courts have upheld as-applied challenges to section 922(g)(1) by nonviolent drug traffickers on similar reasoning.[3]

Karwacki attempts to distinguish the cases on which the district court relied in dismissing his complaint but fails to show any meaningful distinction. He seeks to distinguish *Gay*, in which this Court rejected an as-applied challenge to the federal felon-in-possession statute, on the ground that Gay

---

[3] *See, e.g.*, *United States v. Neal*, No. 23-CR-0141, 2024 WL 1794424, at *7 (E.D. Wis. Apr. 25, 2024) (Seventh Circuit Court of Appeals "has . . . recognized that drug dealing, *even if no firearm is located*, is 'associated with dangerous and violent behavior' that 'warrant[s] a higher degree of precaution'") (quoting *United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011)) (emphasis added); *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) (rejecting as-applied challenge to section 922(g)(1) by defendant convicted of nonviolent drug distribution because "drug dealing is notoriously linked to violence").

13

had been convicted of multiple felonies and was on parole, in contrast to Karwacki's misdemeanor peyote-delivery conviction. (Pet. Br. 13.) And he seeks to distinguish *United States v. Holden*'s statement that "[g]overnments may keep firearms out of the hands of dangerous people who are apt to misuse them," 70 F.4th 1015, 1017 (2023), on similar grounds, contending that his conduct "for which a misdemeanor was deemed appropriate" is not comparable to "violent drug trafficking." (Pet. Br. 13–14.)

Here, as before the district court, Karwacki's "preoccupation with the term 'felony' misses the underlying point." (Pet. App. 27.) The constitutionality of section 941.29(1m)(b) doesn't turn on whether his conviction for peyote delivery is termed a "misdemeanor" or a "felony." It turns on whether applying the statute's firearm restrictions to Karwacki's conviction for peyote delivery is consistent with the nation's tradition of firearm regulation. *Bruen*, 597 U.S. at 24. As the district court explained, it is, and Karwacki identifies no reason to conclude otherwise.

**II.    The Full Faith and Credit Clause does not require Wisconsin to defer to other jurisdictions' decisions about what constitutes a dangerous crime that warrants disarmament.**

The Constitution requires each state to give "[f]ull faith and credit . . . to the public acts, records, and judicial proceedings of every other state." U.S. Const. Art. IV, sec. 1. Karwacki says that this clause requires Wisconsin to defer to other jurisdictions' classifications of offenses as "misdemeanors"

14

or "felonies" rather than to decide for itself what conduct is dangerous enough to warrant firearm restrictions. But he misunderstands the purpose of the Full Faith and Credit Clause, which "was never intended to allow one state to dictate the manner in which another state protects its populace." *Rosin*, 599 F.3d at 577.

The Full Faith and Credit Clause's "primary operational effect . . . is 'for claim and issue preclusion (res judicata) purposes.'" *Rosin*, 599 F.3d at 576 (quoting *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998)). "But it is a profound mistake" to conclude that the Full Faith and Credit Clause grants outside jurisdictions the right to "dictate the manner in which [another state] may protect its citizenry." *Id.* This is because the clause "does not require a State to apply another State's law in violation of its own legitimate public policy." *Nevada v. Hall*, 440 U.S. 410, 422 (1979). Indeed, principles of federalism "preclude[ ] resort to the full faith and credit clause as the means for compelling a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." *Pac. Emps. Ins. Co. v. Indus. Accident Comm'n of State of Cal.*, 306 U.S. 493, 501 (1939).

Applying these principles, this Court has held that the clause did not require Illinois to honor a plea agreement that an individual had taken in New York that provided he would not have to register as a sex offender. *Rosin*,

15

599 F.3d at 574. This Court held that Illinois was entitled to exercise its "police power over the health and welfare of its citizens" by requiring the individual to register as a sex offender in that state despite the New York plea agreement. *Id.* at 577. It explained that "New York has no authority to dictate to Illinois the manner in which it can best protect its citizenry from those convicted of sex offenses." *Id.*

State courts around the country agree that the Full Faith and Credit Clause does not bar a state from exercising its own judgment regarding the collateral effects that an extra-jurisdictional penal judgment will carry within the state's boundaries.[4] The Wisconsin Court of Appeals addressed this question in the specific context of firearm possession in *Moran v. Wisconsin Department of Justice*, 2019 WI App 38, 388 Wis. 2d 193, 932 N.W.2d 430. The petitioner in that case had been convicted of a felony in Virginia, served his sentence,

---

[4] *See, e.g.*, *People v. Laino*, 87 P.3d 27, 34 (Cal. 2004) (despite the Full Faith and Credit Clause, "California . . . is free to determine under its own laws whether defendant's Arizona plea constitutes a conviction for purposes of the three strikes law, notwithstanding the subsequent Arizona judgment discharging defendant from probation and dismissing the proceedings"); *State v. Bush*, 9 P.3d 219, 225 (Wash. 2000) (Washington criminal sentencing statute that required prior out-of-state convictions to be reclassified according to Washington law did not violate the Full Faith and Credit Clause "because a sister state has no authority to regulate Washington's sentencing process"); *Donlan v. State*, 249 P.3d 1231, 1233–34 (Nev. 2011) (despite Full Faith and Credit Clause, "Nevada is free to protect its populace from individuals convicted of sex offenses by enforcing its own registration requirements . . . [b]ecause California lacks the power to prescribe the manner in which Nevada can protect its citizenry"); *McGrath v. Tobin*, 103 A.2d 795, 796 (R.I. 1954) (noting the "long-continued and universal judicial assumption that penal statutes of the states are not within the purview of the full faith and credit clause").

16

and successfully petitioned to have his firearm possession rights restored in Virginia. *Id.* at 433. But the Wisconsin Department of Justice denied his application to purchase a handgun based on his felony conviction. *Id.* He contended that the Full Faith and Credit Clause required Wisconsin to honor Virginia's decision to restore his firearm possession rights, but the court held that the clause did not apply because the Department's denial of his application did not affect his firearm possession rights *in Virginia*. *Id.* at 443–44.

The same reasoning applies here. Wisconsin is "competent to legislate" the dividing line between criminal conduct that warrants disarmament and criminal conduct that does not, so Karwacki may not rely on the Full Faith and Credit Clause to impose another jurisdiction's judgment above Wisconsin's. *Pac. Emps. Ins. Co.* 306 U.S. at 501.

## CONCLUSION

The Department's denial of Karwacki's concealed-carry permit application based on his peyote-delivery conviction was "consistent with the Nation's historical tradition of firearm regulation" and therefore constitutional. *Bruen*, 597 U.S. at 24. This Court should affirm the district court's judgment.

Dated this 8th day of December 2025.

                Respectfully submitted,

                JOSHUA L. KAUL
                Attorney General of Wisconsin

                <u>s/ Aaron J. Bibb</u>
                AARON J. BIBB
                Assistant Attorney General
                State Bar #1104662

                Attorneys for Defendant-Appellee

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0810
(608) 294-2907 (Fax)
aaron.bibb@wisdoj.gov

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), typeface requirements of Fed. R. App. P. 32(a)(5), and type style requirements of Fed. R. App. P. 32(a)(6).

This brief contains 3,074 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 13 point Century Schoolbook.

Dated this 8th day of December 2025.

> s/ Aaron J. Bibb
> AARON J. BIBB
> Assistant Attorney General

# CERTIFICATE OF SERVICE

I certify that on December 8, 2025, I electronically filed the foregoing *Brief of Defendant-Appellee* with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 8th day of December 2025.

> s/ Aaron J. Bibb
> AARON J. BIBB
> Assistant Attorney General